**Donna Katz MAPLES, Plaintiff,**

v.

**UHS OF GEORGIA, INC., UHS of Georgia Holdings, Inc., and UHS of Peachford, L.P., doing business as Peachford BHS of Atlanta, Defendants.**

**Civil Action No. 1:09–CV–01964–WEJ.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 3, 2010.

Gary D. Hooper, Morris Law Firm, Atlanta, GA, for Plaintiff.

Henry D. Fellows, Jr., Eugenia Wooten Iredale, Fellows La Briola, LLP, Atlanta, GA, for Defendants.

## ORDER [1]

WALTER E. JOHNSON, United States Magistrate Judge.

Plaintiff, Donna Katz Maples, a former employee of Peachford Hospital, filed this action alleging that defendants eliminated her part-time nurse position in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 et seq. (Compl. [1] ¶¶ 1, 13, 17, 22–24.) After discovery, defendants moved for summary judgment. (See Defs.' Mot. for Summ. J. [38].) For the reasons explained below, the Court concludes that no disputed issues of material fact remain to be tried. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED.**

## I. STATEMENT OF FACTS

In compliance with Local Rule 56.1(B)(1), defendants as movants filed a Statement of Material Facts in Support of Their Motion for Summary Judgment [38–3] ("DSMF"). Local Rule 56.1(B)(2) requires a respondent like Ms. Maples to submit both a response to the movants' statement of undisputed facts and a statement of additional facts which she contends are material. N.D. Ga. R. 56.1(B)(2)(a)-(b). Ms. Maples did not respond to the movants' statement of undisputed material facts. Under Local Rule 56.1(B)(2)(a)(2), because the record cites support them, the Court must deem each of defendants' proposed facts admitted. See Reese v. Herbert, 527 F.3d 1253, 1267–71 (11th Cir.2008).

Plaintiff did file a "Separate Statement of Uncontested Material Facts in Support of Her Objections to Defendant's Motion for Summary Judgment" [45] ("PSMF"). See N.D. Ga. R. 56.1(B)(2)(b). Defendants have responded, admitting some of plaintiff's proposed facts and denying others. (See Def.'s Resp. to Pl.'s Stat. of Undisp. Mat. Facts ("RSMF") [53–2].) When defendants admit one of plaintiff's proposed facts, the Court accepts it for purposes of this Motion. Where, however, defendants deny one of plaintiff's proposed facts, the Court reviews the record to determine whether the proposed fact is both material and presents a genuine issue for trial. However, the Court does not include proposed facts that are immaterial (PSMF ¶¶ 7, 28), unsupported by the record (id. ¶¶ 12–14, 19), or constitute legal conclusions (id. ¶¶ 4, 29). The Court also includes other record evidence where relevant.

### A. Plaintiff's Employment

On November 12, 2001, UHS of Peachford, L.P. ("Peachford Hospital" or the "Hospital") hired Ms. Maples as a part-time nurse to work on Saturdays and Sundays. (DSMF ¶ 1.) [2] From November 12, 2001, to January 11, 2009, Ms. Maples was a part-time employee of Peachford Hospital. (Id. ¶ 2.) [3] As a part-time nurse at

---

1. Upon the parties' consent [11, 12], the District Court referred this case to the undersigned on October 21, 2009[13] to conduct all proceedings, including entry of judgment. Therefore, the undersigned has jurisdiction to enter this Order. See 28 U.S.C. § 636(c)(1); Roell v. Withrow, 538 U.S. 580, 585–86, 123 S.Ct. 1696, 1700–01, 155 L.Ed.2d 775 (2003). Any appeal from this judgment permitted by law may be taken directly to the United States Court of Appeals for the Eleventh Circuit in the same manner as an appeal from any other district court judgment. 28 U.S.C. § 636(c)(3).

2. Plaintiff was born on January 25, 1952. (PSMF ¶ 1; RSMF ¶ 1.) In 1976, she earned an associate's degree in nursing and became a registered nurse. She subsequently earned both a bachelor's degree and a master's degree. (PSMF ¶ 2; RSMF ¶ 2.)

3. At all times relevant hereto, plaintiff has maintained a full-time job elsewhere during

Peachford Hospital, Ms. Maples helped physicians prepare initial assessments for patients who were admitted on Saturdays and Sundays. She also helped the Assessment Department with patients who were committed during the overnight hours. (*Id.* ¶ 3; *see also* PSMF ¶ 3; RSMF ¶ 3.) She was the only employee who performed these weekend functions. (PSMF ¶ 8.)[4]

### B. *The Elimination of Plaintiff's Part-time Job*

Each year, Matthew Crouch, the Chief Executive Officer of Peachford Hospital, evaluates the needs of the Hospital for the coming year. (DSMF ¶ 4.) In late 2008, Mr. Crouch reviewed expenditures for the 2008 fiscal year and evaluated the needs of Peachford Hospital for 2009. During the review and evaluation process, Mr. Crouch determined that Peachford Hospital was spending too much money for a part-time nurse to help physicians prepare initial assessments for patients on Saturdays and Sundays. He concluded that this expense was operationally no longer needed because Peachford Hospital had enough physicians working on the weekends. (*Id.* ¶ 5.)[5]

Effective January 11, 2009, Peachford Hospital eliminated Ms. Maples's position for financial reasons, and her employment was terminated. Mr. Crouch avers that plaintiff's employment was not terminated due to her age. (DSMF ¶ 6 (citing, *inter alia*, Crouch Decl. [39–2] ¶ 7 and Crouch Dep. [50–2] 74–76, 84, 100); *see also* PSMF ¶¶ 5–6 (plaintiff age 57 at termination date).[6]) Ms. Maples did not suffer any physical injury or property damage as a result of her employment at Peachford Hospital. (DSMF ¶ 7.)

### C. *Plaintiff's Potential Work as an Independent Contractor*

Plaintiff testified that after receiving notice of her upcoming termination (but before its effective date), Dr. Asaf Aleem (an attending psychiatrist at Peachford Hospital) approached her and asked whether she would be interested in working with him and other independent physicians as their employee, performing initial assessments for patients admitted on the weekends. (PSMF ¶ 9 (citing Aleem Dep. [49] 17);[7] *see also* Maples Dep. 58–59.) She was interested in pursuing such an arrange-

---

the Monday–Friday workweek. (Maples Dep. [42] 19–20, 36–37.)

4. Defendants contend that the evidence plaintiff cites fails to support this proposed fact. (*See* RSMF ¶ 8.) The Court disagrees and includes it herein.

5. Ms. Maples testified that, over time, as the Hospital attracted more physicians, the number of hours that she worked on the weekends decreased. (Maples Dep. 37–38).

6. Defendants contend that the evidence plaintiff cites fails to support these proposed facts. (*See* RSMF ¶¶ 5–6.) The Court disagrees and includes them herein.

7. Defendants object to PSMF ¶ 9, asserting that the facts stated therein are not supported by the record. (*See* RSMF ¶ 9.) The Court agrees that Dr. Aleem's testimony is not par-

ticularly enlightening, as he repeatedly concedes that he has little recollection of his conversations with Ms. Maples or Mr. Crouch. (*See, e.g.*, Aleem Dep. 11 ("I don't really have a real clear recollection of that."); *id.* ("I don't really have a clear memory of what conversation we had"); *id.* at 12 ("I don't remember exactly what she said"); *id.* at 13 ("Again, I don't remember the details"); *id.* at 17 (Q: "Do you remember saying that to her?" A: "Yes, sir; I might have."); *id.* at 18 ("I don't remember exactly what she said"); *id.* ("I may have. I mean, I don't remember clearly.").) Much his testimony is mere agreement with questions asked by plaintiff's attorney. However, the Court reviews Dr. Aleem's testimony in a light most favorable to plaintiff and overrules defendants' objection to PSMF ¶ 9.

ment. (PSMF ¶ 10 (citing Aleem Dep. 18);[8] *see also* Maples Dep. 58–59.) However, when Dr. Aleem raised the issue with Hospital CEO Crouch at a regular Tuesday meeting, he made a comment which led Dr. Aleem to believe that he was not in favor of it, which he passed along to Ms. Maples. (PSMF ¶ 11 (citing Aleem Dep. 21–22);[9] *see also* Maples Dep. 59.)

When asked about this situation, Mr. Crouch testified that, at one of their monthly meetings, one of the physicians (he could not recall which one) raised the issue of whether Ms. Maples could continue to perform weekend initial assessments for them at their expense. (Crouch Dep. 86.) Mr. Crouch replied: " 'I don't think that would be a good idea.' " (*Id.*) Mr. Crouch explained that, following her termination, Ms. Maples would no longer be an employee of the Hospital. Thus, in order for Ms. Maples to perform such services as an independent contractor, it would be necessary for her to become a credentialed member of the medical staff. (*Id.* at 87.) However, at that point in time, the Hospital only credentialed physicians and psychologists. (*Id.* at 88.) Further, the Hospital had enough physicians to conduct initial assessments on weekends, and therefore had no need to credential any advanced practice nurses for weekend

work. (*Id.* at 90–91, 94; *see also* PSMF ¶ 15; RSMF ¶ 15.)[10]

Although the Hospital did not issue credentials to Ms. Maples, it later did so for one or two other nurses. According to Mr. Crouch, Dr. Gary Figiel had used one or two advance practice nurses at another hospital to assist him during the week in his geriatric practice. (Crouch Dep. 91–92.) As Dr. Figiel began working more of a caseload at Peachford Hospital, he sought to use nurses in that same way at this new location. Thus, in mid–2009, the Hospital issued credentials to one or two nurses to assist Dr. Figiel from Monday through Friday.[11] (*Id.* at 91; *see also* PSMF 16.)[12] However, these nurses do not work on the weekends providing assistance to doctors as Ms. Maples did. (Crouch Dep. 92–93.) Indeed, no one has been credentialed to work weekends to assist physicians with initial assessments. (*Id.* at 95.)

### D. *Post–Termination Events*

At the time her part-time position was eliminated, Ms. Maples's duties included assisting physicians with initial assessments on Saturdays and Sundays and helping the Assessment Department with patients who were committed during the overnight hours. (DSMF ¶ 8.) Since January 11, 2009, Peachford Hospital has not

---

8. Defendants object to PSMF ¶ 10, asserting that the facts stated therein are not supported by the record. (*See* RSMF ¶ 10.) The Court overrules this objection for the reasons stated *supra* in note 7.

9. Defendants object to PSMF ¶ 11, asserting that the facts stated therein are not supported by the record. (*See* RSMF ¶ 11.) The Court overrules this objection for the reasons stated *supra* in note 7.

10. The Court sustains defendants' objections to PSMF ¶¶ 12–14. The Court relies instead on the record cited in the paragraph preceding this note.

11. These nurses are paid by Dr. Figiel, not the Hospital. (Crouch Dep. 97–98.) Plaintiff placed no evidence in the record concerning the age(s) of the one or two nurses who were issued credentials in order to assist Dr. Figiel.

12. Defendants object to PSMF ¶ 16 on the grounds that the record cited fails to support it. (*See* RSMF ¶ 16.) Because plaintiff's proposed fact is accurate, but omits other facts, the Court substitutes citations to Mr. Crouch's deposition in the text preceding this note.

hired anyone to replace Ms. Maples. (*Id.* ¶ 9.) Moreover, since January 11, 2009, physicians have been responsible for performing their own initial assessments on Saturdays and Sundays and helping the Assessment Department with patients who were committed during the overnight hours. (*Id.* ¶ 10.)

On thirteen (13) occasions since January 11, 2009, Peachford Hospital has scheduled nurses to assist physicians with initial assessments on Saturdays and Sundays because of periodic higher censuses of patients. (DSMF ¶ 11; *see also* PSMF ¶ 20.)[13] The nurses used to provide weekend assessments on these occasions were taken from the part-time pool of PRN nurses.[14] (PSMF ¶ 21; RSMF ¶ 21.)

These PRN nurses were younger than plaintiff. (PSMF ¶ 22; RSMF ¶ 22.) According to Ms. Hayes, one of those nurses was age 52 (Ms. Lowery), another was in her mid-40s (Ms. Steen), and another was age 38 (Ms. Maupin). (Hayes Dep. 25–32.)

### E. *Peachford Hospital's Growth*

Between 2001 and 2010, Peachford Hospital experienced annual revenue growth of between four and seven percent. (PSMF ¶ 17; RSMF ¶ 17.)[15] The patient census has grown since 2003, which has led Peachford Hospital to hire more nurses.

Accordingly, the Hospital employs twenty-five percent more nurses in 2010 than it did in 2003. (PSMF ¶ 18; RSMF ¶ 18.)

### F. *Defendants' Corporate Structure*

UHS of Georgia, Inc. is the one percent (1%) general partner of UHS of Peachford Hospital. UHS of Georgia, Inc. has never had any employees. (DSMF ¶ 12.) UHS of Georgia Holdings, Inc. is the ninety-nine percent (99%) limited partner of Peachford Hospital. UHS of Georgia Holdings, Inc. has never had any employees. (*Id.* ¶ 13.)[16]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice–Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548,

---

13. Although defendants deny PSMF ¶ 20 as factually unsupported (*see* RSMF ¶ 20), the Court disagrees and includes it herein. The 13 occasions referenced in the text occurred over the period from January 11, 2009, through December 3, 2009. (*See* Defs.' Am. Resp. and Objs. to Pl.'s First Set of Interrog. to Defs., filed as Exhibit 5 to Crouch Deposition [50].) There were 46 weekends during that period. Of those 92 Saturdays and Sundays, the Hospital called in nurses to help physicians with initial assessments on 13 of them (or about 14% of the time). (*See* Crouch Dep. 106.)

14. Peachford's Director of Nursing, Rebecca Hayes, describes the PRN ("as needed") pool

as a group of part-time nurses who receive no employment-related benefits. They either schedule themselves when they want to work or the Hospital schedules them when needed to meet staffing goals. (Hayes Dep. [48–2] 20.)

15. Plaintiff submitted no evidence showing that profits grew more or less than revenue.

16. Plaintiff proposes a number of facts about defendants' corporate structure (PSMF ¶¶ 23–27), which defendants dispute. (*See* RSMF ¶¶ 23–27.) Given the Court's resolution of this Motion, these disputes are immaterial.

2552–53, 91 L.Ed.2d 265 (1986)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The non-moving party then "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (non-movant then required "to go beyond the pleadings" and present competent evidence in form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial"). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice–Lamar*, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Id.* (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir.1994) ("Once the moving party has met its initial burden by negating an essential element of the non-moving party's case, the burden on summary judgment shifts to the non-moving party to show the existence of a genuine issue of material fact. For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.") (citation and quotation marks omitted).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511–12. The applicable substantive law will identify those facts that are material. *Id.* at 248, 106 S.Ct. at 2510. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. *Id.* Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* For factual issues to be "genuine," they must have a real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356.

### III. *ANALYSIS*

■ The ADEA applies to individuals who are at least 40 years old, and makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). "To establish a disparate-treatment claim under the … ADEA, … a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, —— U.S. ——, 129 S.Ct. 2343, 2350, 174

L.Ed.2d 119 (2009). "[T]he ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress." *Comm'r Internal Revenue v. Schleier*, 515 U.S. 323, 326, 115 S.Ct. 2159, 2162, 132 L.Ed.2d 294 (1995).[17]

█ Where, as here, there is no direct or statistical evidence of age discrimination, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to evaluate ADEA claims based upon circumstantial evidence. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc).[18]

Under the *McDonnell Douglas* framework, plaintiff must establish a prima facie case of discrimination. *Chapman*, 229 F.3d at 1024. Because the instant case concerns a job elimination (not a discharge for cause), Ms. Maples may establish a prima facie case of discrimination by (1) showing that she was a member of a protected group and was adversely affected by an employment decision; (2) proving that she was qualified for her own position or to assume another position at the time of the discharge; and (3) producing suffi-

cient evidence from which a rational fact finder could conclude that her employer intended to discriminate against her in making the discharge decision. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir.1998); *accord Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1441 (11th Cir.1998).

█ If a plaintiff is successful in establishing a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Chapman*, 229 F.3d at 1024. The Eleventh Circuit describes this burden as "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir.1983). Defendant's burden is one of production, not proof. *Id.* If the employer meets its burden of production, the burden returns to the plaintiff to prove that the articulated reasons are pretext for discrimination. *Chapman*, 229 F.3d at 1024.

█ To overcome a motion for summary judgment, "a plaintiff must proffer sufficient evidence for a factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman*, 229 F.3d at 1024–25. "Provided that the proffered reason is one that might motivate a reasonable employer, an

---

**17.** Although plaintiff argues that "Georgia law allows for recovery of damages for emotional distress in similar circumstances" (Pl.'s Mem. [44–2] 17), the only cause of action asserted in the Complaint is for violation of the ADEA.

**18.** In *Gross*, the Supreme Court noted that it "has not definitively decided whether" the *McDonnell Douglas* burden-shifting framework is appropriate in the ADEA context. *Gross*, 129 S.Ct. at 2349 n. 2. Nevertheless, the Eleventh Circuit has continued to apply *McDonnell Douglas* in age discrimination cases decided after *Gross*. *See Mora v. Jackson Mem. Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir.2010) (per curiam); *Guimaraes v.*

*NORS*, 366 Fed.Appx. 51, 54–55fx (11th Cir. 2010) (per curiam). The Fifth Circuit has done the same. *See Davis v. Farmers Ins. Exchange*, No. 09–10729, 372 Fed.Appx. 517, 519 n. 1, 2010 WL 1404000, at *2 n. 1 (5th Cir. Apr. 6, 2010) (unpublished) (although *Gross* held that Title VII's "mixed motive" standard was inapplicable in ADEA cases, it declined to decide whether it was appropriate to employ the *McDonnell Douglas* framework in ADEA cases; thus, despite *Gross*, Fifth Circuit panel "bound by the burden-shifting framework for ADEA cases that has been employed consistently in our circuit"). This Court is likewise bound. *See Chapman*, 229 F.3d at 1024 (applying *McDonnell Douglas* framework in ADEA case).

employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* at 1030. A plaintiff may demonstrate that an employer's reasons were pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997). "However, a reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Brooks v. County Comm'n of Jefferson County,* 446 F.3d 1160, 1163 (11th Cir.2006) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993)); *see also Springer v. Convergys Customer Mgt. Group,* 509 F.3d 1344, 1349 (11th Cir.2007) (same).

Plaintiff satisfies the first two elements of the prima facie case. She is a member of a protected class (i.e., female) who suffered an adverse employment action and, given her long service in the part-time position, she was qualified for it. *See Clark v. Coats & Clark,* 990 F.2d 1217, 1227 (11th Cir.1993) (court infers that plaintiff who has long tenure in position is qualified); *Young v. Gen. Foods Corp.,* 840 F.2d 825, 830 n. 3 (11th Cir.1988) (plaintiff not required to show proof of qualification element of prima facie case in discharge scenario).[19]

■ However, plaintiff has not satisfied the third element of her prima facie case. In other words, plaintiff has failed to produce probative evidence from a which a fact finder could reasonably conclude that her employer intended to discriminate on the basis of age when eliminating her part-time position. The record shows that, over time, Peachford Hospital hired more attending physicians. With that larger staff, more of whom could be scheduled to work weekends, it was no longer necessary to have a part-time nurse to assist the doctors in conducting initial assessments; there were enough of them that they could do it themselves. Indeed, plaintiff herself recognized that, over time, the number of hours she worked on the weekends was decreasing. The record reflects that the employer's intent was to eliminate an unnecessary expense, not to discriminate on the basis of age.

■ Assuming, however, that plaintiff had satisfied her prima facie case, the Court finds that defendant has articulated a legitimate, non-discriminatory reason for the discharge decision. Specifically, with the increase in the number of physicians available on the weekends to conduct initial assessments, it was no longer necessary for Peachford Hospital to employ plaintiff to conduct them. Eliminating a position to avoid an unnecessary expenditure is a legitimate, non-discriminatory reason for an employment decision. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1083–84 (11th Cir.1990).

■ Because Peachford Hospital has met its burden of production, the burden returns to the plaintiff to prove that the articulated reason is a pretext for discrimination. *Chapman,* 229 F.3d at 1024. As noted above, she must "proffer sufficient evidence for a factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Id.* at 1024–25. There simply is no probative evidence that Peachford Hospital's busi-

---

**19.** Plaintiff presented no evidence that she was qualified to assume another position at Peachford Hospital at the time of her discharge.

ness decision that it no longer needed plaintiff's services on the weekends because it had sufficient psychiatrists on staff to perform that job, was a pretext for age bias. Plaintiff has failed to show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Combs,* 106 F.3d at 1538.

The undisputed evidence is that Peachford Hospital eliminated plaintiff's job and has not filled it. On a small number of occasions in the year following plaintiff's dismissal, the Hospital has called in PRN nurses to assist with initial assessments on weekends when there were more patients (or fewer doctors). However, two of the three PRN nurses called in for that occasional weekend work were themselves older individuals (i.e., age 52 and mid–40s). Moreover, the fact that Peachford Hospital did not credential plaintiff to work weekends as an independent contractor is *not* evidence of age bias, as plaintiff has not shown that the nurses who were credentialed were substantially younger than her or that they were credentialed to perform work similar to what she had performed.

In the end, it is not this Court's role to second-guess the wisdom of Peachford Hospital's business decision as long as it was not motivated by age bias. *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1341 (11th Cir.2000); *see also Chapman,* 229 F.3d at 1030 (plaintiff not allowed to substitute her business judgment for that of the employer). As the Eleventh Circuit has reiterated numerous times, federal courts

> "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no

matter how mistaken the firm's managers, the ADEA does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior."

*Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991) (quoting *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988)); *accord Chapman,* 229 F.3d at 1030.

In this case, the record shows that Peachford Hospital gave an honest explanation of its behavior. Plaintiff has failed to submit probative evidence that the decision was based on her age. Accordingly, because there are no disputed issues of material fact remaining for trial, summary judgment must be entered for defendants.

## IV. CONCLUSION

For the reasons explained above, defendants' Motion for Summary Judgment [38] is **GRANTED.** The Clerk is **DIRECTED** to issue a judgment for defendants with costs taxed against plaintiff and to close this case.